ENIL GONZÁLEZ MIRANDA, Plaintiff and Appellant, *v.* JULIA SANTIAGO, Defendant and Appellee.

No. 12165. Decided January 12, 1962.

*Enrique González, Romero Barceló & Herrero Frank* for appellant. *J. Ramírez Viñas* for appellee.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

In *Mestre v. Pabeyón, ante,* p. 356, we decided that if the act giving cause for divorce is committed in Puerto Rico, it is not a jurisdictional prerequisite that the plaintiff be domiciled herein. This case presents a similar situation. The trial court dismissed the complaint on the same grounds it

dismissed the one filed in *Mestre*. In the present case no evidence was introduced. The trial court based its judgment in that it is alleged in the complaint that when defendant abandoned the plaintiff she went to live in the city of New York. And the plaintiff, upon verifying the complaint states that he resides in Brooklyn. The trial court understood from the contents of the complaint, that neither spouse was residing in Puerto Rico.

■ Apparently the *Mestre* case disposes of this appeal in view of what was stated in *Sánchez* v. *Gutiérrez*, 69 P.R.R. 517 (1949), a case of separation for over three years, upon interpreting the provisions of § 97 of the Civil Code—31 L.P.R.A. § 331—which provides that "no person can secure a divorce under this title who has not resided [1] in the Commonwealth for one full year immediately preceding the action, *unless the act or acts on which the suit is based have been committed in Puerto Rico . . .*" (italics ours) as if "what the statute requires is that the separation, that is, the act of separating, takes place in Puerto Rico." But precisely bearing in mind what we have just decided in *Mestre*, it becomes necessary to re-examine what we stated in the *Sánchez* case.

■■ From the complaint filed in the present case, it appears that when the defendant abandoned the plaintiff she left Puerto Rico. And at the time of filing this action both parties resided in New York. The lapse of time required by the code, once the nonconsent was manifested to constitute desertion of one spouse by the other, took place outside the Commonwealth. We have already seen that the legal provision applicable, § 97 of the Civil Code, requires that to obtain divorce a person should have been domiciled in Puerto Rico during the year immediately preceding the filing of the complaint *unless the act on which the suit is based has been*

---

[1] In *Foss* v. *Ferris*, 63 P.R.R. 547 (1944) we stated that the term residence in this sense was equal to domicile.

*committed in Puerto Rico.* Thus, the law provides that when the complainant is not domiciled in Puerto Rico, the act on which the divorce suit is based must have been committed here.

In cases of desertion the act on which the divorce is grounded is not "committed" with the initial act of separation. It is not until the period of time fixed by the law has elapsed, as we have set forth, constituting desertion, that the definite cause which gives rise to divorce is perfected. In the case of *Oatley* v. *Oatley*, 161 A.2d 834 (D.C. Mun. App. 1960) it was stated:

"There is no difficulty in determining when a right of action based on adultery occurs. That act is specifically referable to a certain time and place. Unlike separation or desertion the physical act of adultery immediately gives rise to the cause or right of action; the cause is perfected in the very act. But separation and desertion are continuing acts; the cause—the right of action—incident to them is not perfected until the required period of time has elapsed. Until that has run no rights can be predicated on the mere physical act of one party leaving the other. Indeed, some event may stay the running of the time so that no right of action ever matures. The time requirement, then, is jurisdictional; no right of action can arise unless it, along with all the other elements of the action, is fulfilled. To phrase it otherwise, for our purposes, no cause can occur until all the requirements are met."

See also *Mullenband* v. *Mullenband*, 208 S.W. 801 (Ark. 1919).

And this is the reasonable way of interpreting the law. It is what the clear text of § 97 provides. Otherwise, in the light of our decision in *Mestre*, it would be rendered possible for the abandoned spouse, because of the mere fact that the initial act of desertion occurred in Puerto Rico, to return to Puerto Rico to file the divorce suit here after the lapse of one year, without either party having been domicil-

ed in Puerto Rico during the period of the abandonment. This is not authorized by the law.

■■ The situation presented in the case at bar is different from the situation we considered in *Sánchez* v. *Gutiérrez*. In *Sánchez* if the record is examined we will find that it appears from the complaint filed and from the evidence in support thereof that the defendant wife resided uninterruptedly in Puerto Rico from the time of their separation up to the date on which the suit was filed. And § 97 of the Civil Code, as we have seen, provides that "no person can secure a divorce under this title who has not resided in the Commonwealth for one full year immediately preceding the action, *unless the act or acts on which the suit is based have been committed in Puerto Rico or while one of the parties to the marriage resided here.*" (Italics ours.) Thus, the conclusion we reached in *Sánchez* is the correct one, since the last part of § 97 relieves the plaintiff from the requisite of having been domiciled in Puerto Rico during the year prior to the filing of the suit, if the act on which the same is based is committed in Puerto Rico or if one of the spouses resides here. And the defendant in *Sánchez* resided here.

In conformance with the above-mentioned principles the language used in *Sánchez*, being incorrect, should be considered clarified to the effect that when the act on which the suit is based is committed in Puerto Rico, in cases of desertion or separation, "what the statute requires is that the separation, that is, the act of separating, takes place in Puerto Rico."

Now, in the case at bar, no evidence whatsoever was introduced. The allegations in the complaint are not sufficient to determine that the plaintiff was not domiciled in Puerto Rico during the year preceding the date on which the complaint was filed. It appears from the allegations that at the onset of the desertion the spouses had their home established in the town of Arroyo. The fact that when the com-

plaint was verified, which verification took place in Puerto Rico, the plaintiff stated that he was a resident of Brooklyn, without more, does not establish that he was not domiciled in Puerto Rico.

█ As we stated in the case of *González* v. *Secretary of the Treasury*, 76 P.R.R. 128 (1954):

"Now then, pursuant to § 11 of our Political Code, in order to determine domicile the following rules shall be observed:

"1.—It is the place where one habitually resides when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose.

"2.—There can only be one domicile.

".  .     .     .     .     .     .     .

"7.—Domicile can be changed only by the union of act and intent.

"The parties agree that in order to acquire a domicile by voluntary choice, two requirements are essential, to wit: (1) physical presence and (2) intention to remain in the place chosen. Kennan, *On Residence and Domicile*, § 13; 53 Harv. L. Rev. 68."

In *Carrero* v. *Del Castillo*, 41 P.R.R. 424 (1930) we quoted from I Manresa, *Comentarios al Código de Enjuiciamiento Civil Español* 225–227 as follows:

"However, it must be borne in mind that the domicile is not lost by temporary absence from the place where one lives without the express or presumptive purpose of giving it up. It is necessary that the fact should be accompanied by an express or presumptive will."

█ A concise explanation of what constitutes domicile is found in *Bixby* v. *Bixby*, 361 P.2d 1075 (Okl. 1961), quoting from a previous case:

"To effect a change of domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place with intention of making it a permanent home."

See, also, *Lókpez* v. *Fernández*, 61 P.R.R. 503 (1943) ; *Sureda* v. *Sureda*, 22 P.R.R. 620 (1915) ; § 11 of the Political Code, 1902, 1 L.P.R.A. § 8; Reese, *Does Domicile Bear a Single Meaning*, 55 Colum. L. Rev. 589 (1955) ; Tweed & Sargent, *But What of Domicile*, 53 Harv. L. Rev. 68, 82 (1939).

The judgment appealed from should be reversed and the case remanded for further proceedings not incompatible with the principles stated in this opinion.

Mr. Justice Serrano Geyls did not participate herein.

