This is an action brought for divorce on the ground of extreme cruelty under the 1923 supplement of the Divorce act.
The petition is dated June 15th, 1927, and the acts of cruelty complained of therein took place prior to December 15th, 1926. An answer was filed; there was no counter-claim.
The petitioner and defendant lived together from the year 1917 until September, 1926, at which time cohabitation finally ceased. The petitioner, with her two children, continued to occupy the same house with the defendant up to July, 1927, at which time the petitioner left the house with her children, and since July, 1927, the parties have lived separate and apart.
The petitioner alleges that from and after the month of March, 1926, there was great discord in the family life; that the husband committed several vicious assaults upon the wife, including among which was an assault made upon the wife during June, 1926, which consisted of the husband jumping at the petitioner and grabbing her by the throat, swearing and *Page 305 
pressing the thumbs so severely on the throat that petitioner became unconscious and black and blue marks remained on the throat for several days thereafter. It is also alleged that on another occasion, during August, 1926, while the parties were riding in an automobile, the defendant struck the petitioner, and upon the arrival at the house the defendant grabbed the petitioner by the back of the neck and rushed her up the steps, and that the petitioner's legs were skinned, and that she fell. That on this occasion the defendant swore at the petitioner, grabbed hold of her in the house and shoved her into the bedroom and pushed her head up against the wall and caused her to become unconscious and to suffer serious effects upon her health; that the defendant on the following morning stated to petitioner that his eyes did not deceive him, and that he had seen the petitioner with her hand inside of a man's trousers. It is also alleged that on another occasion, about July 5th, 1926, when petitioner had invited a few friends to the house for defendant's birthday, the defendant called to the petitioner so that some of the guests could hear, telling her that she had to "get all the Goddamned bastards out of the house," and thereby caused the petitioner to cry and become hysterical.
It is also alleged that on another occasion, during the first week in September, 1926, in the presence of the petitioner's mother, the defendant stated to the petitioner that she was being satisfied by other men, and that that was the reason she did not want the defendant.
It is also alleged that on another occasion the defendant told the petitioner that she was not fit to be a mother.
It is also alleged that the defendant made excessive demands for sexual intercourse, to the detriment of the petitioner's health, and on many occasions accomplished the same by force, thereby causing petitioner much pain and suffering.
Also, that on another occasion during the early part of September and the day before cohabitation ceased between the parties, the defendant called the petitioner a "lazy slut," and then threw the child into the lap of the petitioner while petitioner was lying down in bed, and thereby injured the *Page 306 
petitioner, caused her to lose her breath and to become nauseated.
Also, that on a number of occasions, without justification, the defendant accused the petitioner of unchastity, in the presence of Mrs. Shann, and thereby caused her to be upset and hysterical.
The defense is a denial of all that the petitioner has said as to physical violence.
I am satisfied that the defendant is a highly respectable man, and that he loves his wife dearly, and will welcome her return to his home at any time. The defendant appears to be a man with proper pride, industrious and loving. The evidence satisfied me that the petitioner, however, is a woman seeking the admiration of other men. She seems to be flirtatious, and apparently cares nothing whatever for the defendant, and yet, strange as it may seem, I am satisfied that he continues to love her. The evidence satisfies me that the petitioner did not conduct herself as a wife should, and the defendant would hardly have been a normal man if he had not bitterly resented her actions. She was constantly wounding his amour propre, and I have no doubt that at times he did give her a shaking. I am of the opinion that the testimony of the petitioner and her witnesses has been exaggerated.
The petitioner seemed to find a perverse satisfaction in arousing the doctor's jealousy and in seeking to annoy him, as at Maplewood, when she, as hostess, went upstairs with a man named Kelley and was later found there sitting on Kelley's lap.
In 1918 Dr. Barry testified that the petitioner told him that she did not know how long she was going to live with her husband and she was dissatisfied about money; and that on another occasion she told Doctor Barry that she would rather have any man the father of her children than her husband. Doctor Barry also testified that he had seen the petitioner strike her husband in the face on Main street, East Orange.
It appears that the petitioner received the treatment she deserved. Barton v. Barton, 97 N.J. Eq. 404; 128 Atl. Rep. *Page 307 798; Hart v. Hart, 99 N.J. Eq. 373; Smith v. Smith, 40 N.J. Eq. 566; Wood v. Wood, 97 N.J. Eq. 1; Hauenstein v.Hauenstein, 95 N.J. Eq. 34.
There is nothing in this case to show any conduct that affected the physical safety or health of the petitioner.
A decree will be denied.